1498

FILED

MAY 30 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SHIRLEY V. REMMERT, PRO SE
990 Berkeley Avenue
Menlo Park, CA 94025
Tel: 650-921-8820

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shirley V. Remmert,<br>     Petitioner<br><br>         v. | PETITIONER SHOWING CAUSE<br>FOR EXHAUSTION OF STATE REMEDIES;<br>STATEMENT OF CHALLENGED<br>CONVICTIONS;<br>BASIS FOR CONSTITUTIONAL CLAIMS/<br>EXHIBIT A, <br><br>RE HABEAS-CORPUS PETITION |
| Charles P. Fox,<br>District Attorney<br>Of San Mateo County et al.,<br>     Respondents<br>                            / | CASE NO. 08-1645 CRB<br><br>HON. CHARLES R. BREYER |

1

## Table of Contents

EXHIBIT A , APPELLATE DEPT. OF SUPERIOR COURT ORDER

### I
### EXHAUSTION OF STATE REMEDIES

Page

A. Procedural History……………………………….......................... 1
B. Inadvertent Omission of Appeal on p. 3 of Petition (No. SM340531A
    And Other Matters.………………………………........................... 3
C. Conclusion.……………………………….................................... 4

### II
### CONVICTION I AM CHALLENGING

Case No. C-08-1645 (SM340531A).……………………………............... 5
Case No. C-08-1644 (SM351187A), if allowed…………………………. 5

### III
### BACKGROUND OF CASES……………. 5~ 10

### IV
### BASIS OF CONSTITUTIONAL CLAIMS

A. 42 U.S.C. sec. 1983.……………………………........................... 10
B. Harm to my Interests.……………………………........................... 10
C. Unjustified Harm/ County and State's Lack of Jurisdiction………… 11
D. Unjustified Harm that is Irreparable………………………………... 11
E. Violation against the First Amendment Right to Associate/
    Alleged Invalid Restraining Order………………………………… 12
F. Violation against the First Amendment Right of Free Speech………. 12
G. Violation against the 14th Amendment Right of Due Process
    And Equal Protection of the Laws………………………………… 12
        -No Arraignment for the Eva Al-Z. Case…………………. 12
        -Retaliatory Abuses in Court………………………………. 12
        -Inconsistent Rulings………………………………............. 14
        -Unlawful Orders……………………………….................. 14
        -Expert Witnesses Were Not Credible………………………. 14
        -Marsden Defense………………………………................... 14
        -Abuse of Court's Discretion………………………………. 15
Conclusion.……………………………….................................... 15
Relief Requested.……………………………….............................. 16

### DECLARATION…………………………. 16

EXHIBIT A



**ENDORSED FILED**
**SAN MATEO COUNTY**

**APR 1 6 2008**

Clerk of the Superior Court
By Kathy Mochel
DEPUTY CLERK

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF SAN MATEO

## A P P E L L A T E    D E P A R T M E N T

Hon. STEPHEN M. HALL, Presiding Judge

Hon. MARIE S. WEINER, Judge

AD No. **4986**                              Superior Court Number **SM340531A**

**PEOPLE OF THE STATE OF CALIFORNIA**  vs. **SHIRLEY REMMERT**

Plaintiff(s) & RESPONDENT                    Defendant(s) & APPELLANT

Appeal from Superior Court, SO Jud. Dist. Hon. **ELIZABETH K. LEE**

---

**Appearances**

APPELLANT  **DARRYL S. FRIED**, Attorney

RESPONDENT  **SEAN DABEL**, DDA


S U B M I T T E D                    **Apr 11, 2008**
                                     Date of Hearing


**"AFFIRMED"**


_____Appellant _____Respondent to recover costs

_XXX__Each party to bear own costs

Dated     **APR 1 4 2008**          .

We Concur:

_____          _____
MARIE S. WEINER, JUDGE            STEPHEN M. HALL, PRESIDING JUDGE


This copy of the decision has been forwarded to the
trial judge before the expiration of the time for granting a
rehearing or certification to the Court of Appeal and is not
to be treated as a final decision on appeal.

I, Petitioner Shirley V. Remmert, hereby show cause as to why my petition for habeas corpus for the overturning of Case No. 08-1645 CRB (SM340531A) should not be dismissed for failure to exhaust state remedies.

Since I have not exhausted all state remedies regarding a trailing probation case (No. SM351187A/ 1644 CRB), I hereby advise the court that the said case is not based on the same grounds as the present habeas corpus petition, 08-1645 CRB.

**I**

## EXHAUSTION OF STATE REMEDIES

A.            Procedural History

1.    I filed a petition for writ of habeas corpus on February 8, 2007 in the Appellate

Division of the Superior Court of San Mateo County (Case No. **SM340531A**; HC-1857).

The petition was denied on March 29, 2007.

2.    I filed a motion for reconsideration of the petition, **SM340531A** on April 11, 2007

and it was denied.

I was jailed beginning May 3, 2007.

3.    I filed an ex parte motion for modification of the concurrent sentence of Case No.

**SM340531A** and SM351187 on July 19, 2007 in the Superior Court. Denied on July 31,

2007.

I was released from jail on August 29, 2007.

4.    I attempted to file a petition for writ of habeas corpus in the Appeals Court of the

State of California. It was "Received" on October 29, 2007 (Case No. **SM340531A**;

SM351187). There was no response from the court.

5.    On November 29, 2007, Attorney Darryl S. Fried informed me by letter that he

was appointed by the Private Defender Program of San Mateo County to represent me on

my appeal from cases SM340531A and SM351187A. (It later turned out that he only

appealed SM351187A.

6.    I applied for permission to file a petition for writ of habeas corpus on December

22, 2007 in the California State Court of Appeals of the state of California. The clerk

would not receive them or file them, because of a vexatious litigant order in the Superior

Court. However, the petition was assigned a case number: A119540. The petition was

regarding the two Superior Court cases:  No. **SM340531A** and SM351187A.

7.      On January 7, 2008, I filed a petition for writ of habeas corpus in the Supreme

court of the State of California and requested a "Review to Exhaust State Remedies"  The

petition was denied on February 13, 2008, Case No. **SM340531A** and SM351187A

(A119540).

8.      On March 12, 2008 my petition for writ of habeas corpus  was "Received" by the

U. S. District Court as Case No. **SM340531A** or C-08-80034MPH (Presently filed as C-

08-1645 CRB).

9.      The petition for writ of habeas corpus (a trailing probation offense) was also

"Received" on March 12, 2008 by the same court as Case No. SM351187A or C-08-

800033MPH (Presently filed as C-08-1644 CRB).

>           B.      Inadvertent Omission of Appeal on p. 3 of Petition  (No. SM340531A)
>                                      and Other Matters

10.     I did not hear from Private Defender Darryl Fried at this point.  I inadvertently

omitted mention of an appeal on page 3 of the petition (1645 CRB). However, I wrote

about the unknown status of the appeal on page 3 of the companion petition (1644 CRB).

I was still under the impression that the attorney appealed both cases.

11.     On January 17, 2008, Attorney Darryl Fried filed on my behalf an appeal in the

Appellate Department of the Superior Court.  He designated the case on the opening brief

as Case No. AD 4986; 4987 (SM340531; SM351187).

12.     After reading his brief, I realized that he was appealing only Case No.

SM351187A (C-08-1644).

13.     The Appellate Department of the Superior Court affirmed the decision of the

Superior Court on April 16, 2008 (**Exhibit A,** attached). The District Attorney's

response to my petition stated that there was only harmless error in the sentencing

procedure.

14.     The order denying the appeal corrected the attorney's designation of the cases and

stated that the appeal was concerned with only one case: "No. SM351187A" (C-08-1644)

**Exhibit A,** attached).

C.     Conclusion

15.     Re my motion to consolidate: The petition in C-08-1644 (SM351187A) may not

be premature because the Appellate Division of the Superior Court of San Mateo County

has ruled on it on April 16, 2008 (**Exhibit A,** attached).

16.     The appeal of Case No. 351187A filed by Attorney Fried is not based on the same

grounds as the currently pending habeas corpus petition, 08-1645 CRB. He argued on the

irregularities of due process in the sentencing of the June, 2007 trial.

17.     Case No. SM340531A (No. C-08-1744) in bold print above, sections 1, 2, 3, 4,

and 6 has been reviewed or considered for rejection on all of the appropriate state levels

and has exhausted all of the state remedies.

        In the following discourse, I shall specifically identify the conviction I am

challenging and the basis for my constitutional claims in the cases.

**II**

## CONVICTION I AM CHALLENGING

I am challenging misdemeanor convictions as follows:

### Case No. C-08-1645 CRB (SM340531A)

(Date of Incident)

a.    PC sec. 368( c);      Harm to a Dependent - March 26, 2005

b.    PC sec. 368( c);      Harm to a Dependent - June 11, 2005

c.    PC sec. 166(A)(4), Contempt of Court      - April 13, 2006

Trial Date: November, 2006; Convicted: January 17, 2007

### Case No. C-08-1644 (SM351187A)

(Date of Incident)

a.    PC sec. 166(A)(4), Contempt of Court    - April 25, 2007

b.    Trailing Probation Violation              -April 25, 2007

Trial Date: May, 2007; Convicted: June, 2007

**III**
## BACKGROUND OF CASES

1.    The events that gave rise to Case No. SM340531A (1645 CRB) and SM351187A

(1644 CRB) are as follows:

2.    Insofar as my adult daughter, Eva Al-Zaghari is defamed as mentally ill and

PETITIONER'S OSC/ HABEAS/ 08-1645 CRB                                    5

falsely labeled as a dependent by the government, I am also defamed as negligent or abusive of her welfare.

3.      Eva Al-Z. was intentionally misdiagnosed by a psychiatrist, Dr. Rist in 1990 as mentally ill after she informed him that she, as the victim, reported a crime of drugging and rape to the Menlo Park police. He refused to treat her for trauma. The psychotropic drugs that he forcibly treated her with under Welfare and Institutions Code sec. 5150 caused side effects on her part that were interpreted as psychosis and caused a repeated admission and forcible drugging in 1995. I believe he reported me as a negligent parent.

4.      In 1997, a San Mateo County Adult Protective Services (APS) social worker, Paul Buchanan, abused investigation procedure by filing a complaint against me in his office, since he failed to interview me and interviewed only persons who were exploiting my daughter. Other social workers also abused investigation procedure by filing their complaint in their office, since they failed to interview my father against whom my mother, Julia Venoya, was claiming fraud over a million-dollar quitclaim.

5.      In 1998, Eva Al-Z. was physically abused in the Middle East by a husband interested only in a green card and in his taking custody of Eva Al-Z.'s unborn baby. In 1999, Eva Al-Z.'s newborn was taken away from her by Children and Family Services and given to her Palestinian in-laws, because she did not recover quickly enough from a Cesarean. Eva Al-Z. and I tried to sue the former in-laws for alleged foul play in the taking of Eva Al-Z.'s child and for extorting $185,000 from my family.

6.      In 2000, she was diagnosed as a diabetic. In 2002, she had a diabetic seizure on an

airplane and was convicted by the U. S. District Court in Chicago, Illinois for a

misdemeanor for having slapped a stewardess, who would not let her go to the bathroom.

7.      In 2003, APS, referred by my father, Delfin M. Venoya, made monthly forays into

my Menlo Park home that I shared with my mother and my daughter. APS was looking

for a cause to investigate after sheriff deputies and paramedics could find no cause for a

"5150" against my mother or my daughter.

8.      In 2004, a county psychiatrist, Dr. Mary Margaret Flynn, M.D. reported in her

medical record that mental health community members follow Eva Al-Z. Making false

reports on July 29, July 30, and November 6, 2004, they succeeded in having her picked

up and taken to hospitals on each of those dates. On November 18, 2004, Dr. Flynn

wrote Eva Al-Z. does not fit the criteria for a conservatorship. Four months later, on

March 26, 2005, she was picked up in her home and locked up to this day only out of

retaliation by the county. I had helped my mother leave a nursing home where she was

terrified that they were misdiagnosing her as terminally ill.

9.      On April 1, April 13, and May 4, 2005, Dr. Flynn repeated her misrepresentation

to the courts that police reports of a "5150" triggered the conservatorship. There were no

police reports. On May 12, 2005, she sent Eva Al-Z. to Cordilleras Mental Health

Center, described as "creepy" by Eva Al-Z.'s former attorney, Sheila Marko. "Psych"

workers there assaulted and intimidated Eva Al-Z. in a systematic manner. The forcible

drugging that was formerly short-term and sporadic between 1990 and 2004 now became

daily drugging for over two years. Against psychiatric hospital policy, Dr. Flynn sent her

PETITIONER'S OSC/ HABEAS/ 08-1645 CRB                                                7

to Cordilleras, a vile, depressing, brutalizing place before the conservatorship trial took place, so that Eva Al-Z. appeared at her trial severely disabled.

10.    [Hereinafter, exhibits may be found in the habeas petition No. C-08-1644 CRB.]

11.    The conservatorship order and Letters of Conservatorship became effective on June 13, 2005 (**Exhibit 1**).

12.    Psychiatrist Dr. G. Austin Conkey, M.D. treating her at Cordilleras regularly mocked her, according to my daughter. His medical report states that family visits must stop and compliance with medicine continue. On July 11, 2005, the Public Guardian obtained a restraining order (**Exhibit 14**) against my contact with Eva Al-Z., because I helped her escape Cordilleras. After she escaped, the workers refused to give her soap for bathing for several months and reported her as lacking hygiene. She became sickly and complained to me that her heart would hurt. She refuses to complain about health problems to the staff, as they are causing the problems.

13.    A pattern ensued whereby Eva Al-Z. would be given an extra heavy dose of the mind-altering drug just before a court appearance for her release or for a request for visits with her son, whom she barely knew.

14.    She and I have lost all contact with her son because her Deputy Public Guardian Marcelle Moon asked the Family Court to stop all visits. After granting Ms. Moon her petition in September, 2005, Eva Al-Z. was now totally isolated. Members of my family abandoned her, as they believe that psychiatrists and government workers would not lie. She and I have not been allowed to see her son since March, 2005. Abuses against Eva

Al-Z. mounted.

15.    On February 14, 2006, at my petition to vacate or modify the restraining order, the Public Guardian accused me of bringing harmful substances or food to Eva Al-Z. It was a bogus charge.

16.    In November, 2006, I stood trial for helping Eva Al-Z. escape from Cordilleras on March 26, 2005. Abuses continued. In March, 2007, at Cordilleras, one tip of her finger was pricked with a needle about 21 times a day on the pretext of finding a rise in blood sugar. Her blood sugar was reported as normal each time (Sheriff Deputy Meyer investigated).

17.    Fearing more sheriff inquiries by Deputy Meyer, in April, 2007, she was allowed to go outside for the first time in two years and was transferred to a county halfway house in Daly City. Having lived at Cordilleras in an area the size of a courtroom without ever being allowed outside for two years, and after being drugged every day for two years straight, she was now placed in a high-crime neighborhood and taken off the mind-altering drugs. She was told by psych workers to take a walk outside alone. She told her father that she was afraid that the workers were trying to make her into a "hooker." Male strangers were always in the house and she was in danger of being forcibly drugged again under the conservatorship order. I helped her escape on April 25, 2007. She was returned to the halfway house in Daly City. On May 2, 2007, she escaped on her own. She was found by deputies and was returned.

18.    For this second incident when I helped her escape on April 25, '07, I stood trial in

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

June, 2007. She was brought into court in pain from the drugs given to her in the hope that she would testify against me. I have not seen her since June, 2007. I do not know where she is. First a suspicion, but now it is clear that our enemies want her dead. She is still a witness to an unsolved crime in 1990.

## IV
## BASIS OF CONSTITUTIONAL CLAIMS

### A.        42 U.S.C. sec. 1983

1.      The San Mateo County Public Guardian, the Sheriff's Office, the District Attorney's Office, and the Superior Court of the State of California (District Attorney et al.) violated 42 U.S.C. sec. 1983 (violation of my civil rights under color of law) when I was convicted in January, 2006; then arrested, jailed, and convicted in June, 2007) for rescuing my adult daughter from the defamation, assault, battery, and false imprisonment of county employees.

2.      The detainment and alleged false arrest of my daughter on March 26, 2005 was a culmination of a series of similar incidents of false arrest beginning on July 29, 2004 (**Exhibit No. 5**, last pages).Since March 26, 2005, she has been permanently locked up, while I have had to witness numerous physical and mental abuses. The District Attorney et al. appears to say in effect that it can (1) do unjustified, irreparable harm to my interests, (2) refuse to consider my evidence of any harm toward my daughter and me, (3) punish me for protecting or rescuing my daughter.

### B.        Harm to my Interests

3.      My interests include my family. Eva D. Al-Zaghari, now conserved, is my adult daughter.

C.     Unjustified Harm/ County and State's Lack of Jurisdiction

4.     My daughter, Eva Al-Zaghari was railroaded into a conservatorship without a law enforcement report against her or a paramedics report against her during the investigation period for a conservatorship. The U.S. District Court deemed her competent for its probation program (November, 2002 ~ November, 2005), Exhibit No. 12, while the county decided to conserve her on March 26, 2005.

5.     The county psychiatrist, Mary Margaret Flynn, M.D. wrote in her medical record on November 18, 2004 that Eva Al-Z. does not fit the criteria of a conservatorship.

6.     Dr. Flynn, M.D. misrepresented police involvement at several different hearings by testifying that police reports sent Eva Al-Z. to the county hospital. There were no relevant and timely police reports made on March 26, 2005 or at the time that she testified.

7.     Coexisting with the county's false statement that Eva Al-Zaghari is gravely disabled is its false statement that I am the negligent caregiver.

D.     Unjustified Harm that is Irreparable

8.     The abuses inflicted on my daughter by the present county employees are likely to be irreparable or fatal (**Exhibit 13**). She has suffered from post-trauma after being drugged and raped while semi-conscious in 1990.

9.     Both she and I have lost contact with her eight-year-old son since September, 2005, because the Public Guardian petitioned the Family Court to deny visits on account of Eva Al-Z.'s so-called grave disability and because of my criminal record in 2005,

1 | stated above.

2
3

E.    Violation against the First Amendment Right to Associate
Alleged Invalid Restraining Order

4 | 10.    The restraining order in Case No. 114069 issued on July 11, 2005 (**Exhibit 14**)

5
6 | prohibits my contact with Eva Al-Z. It is allegedly invalid because it is based on an

7 | incident on June 12, 2005, when Eva Al-Z. was not yet conserved by the Letters of

8 | Conservatorship of June 13, 2005 (**Exhibit 1**). Second, she was denied the right to

9 | appear in court at the hearing when the order was issued. Since she was not conserved on

10
11 | the date of the incident (June 12, 2005), the burden is on the county and state to depose

12 | her on that date in time for a future hearing.

13 | 11.    The conservatorship order (**Exhibit 11**) does not prohibit our contact with each

14 | other.

15
16

F.    Violation against the First Amendment right of Free Speech

17 | 12.    The legalized drugging of Eva Al-Z. under the conservatorship order was done for

18 | the purpose of preventing her from freely speaking her mind and to join with me in our

19
20 | complaints or litigation.

21
22

G.    Violation against the Fourteenth Amendment Right of Due Process
and Equal Protection of the Laws

23 | 13.    Examples of the lack of due process in my cases are as follows:

24 | (No arraignment for the Eva Al-Z. Case)

25 | 14.    I was never arraigned for the above misdemeanor convictions.

26
27 | (Retaliatory Abuses in Court)

28

PETITIONER'S OSC/ HABEAS/ 08-1645 CRB                                    12

15.    The problem on March 26, 2005 regarding my mother, Julia Venoya, prejudiced

the jury (**Exhibit 15**) The facts about my mother should have made her case a separate

one.  My mother was placed in the terminal ward of a county nursing home when there

was nothing wrong with her.  The facility was only recently quarantined because of a

high-bacterial count and fatalities.  I helped her leave at her insistence.  The paramedics

who examined her found nothing to complain about.  Sheriff deputies searched our home

as they looked for my mother.  Finding only Eva Al-Z., they ordered her to be detained at

Kaiser, which sent her to the county psychiatric facility.  I was charged by the Burlingame

police with felony kidnapping, but after the arraignment, the District Attorney decided not

to prosecute and in the same case prosecuted me for harm to a so-called dependent, Eva

Al-Z. on the incident of March 26, 2005.

16.    A motive behind the lack of due process  was retaliation for complaining about

my mother being in the terminal ward of a county nursing home just after the bad

publicity about the quarantine.  I was summoned to court and arraigned for a case about

my mother.  I assumed it was about my mother, but her name was never mentioned.  Then

my private defender said that the case would be about my daughter.

17.    On November 17, 2006, around 11:20 a.m., Deputy County Counsel after

testifying on behalf of the county against me made silent contact with Jury Foreman

Skinnell as if asking him a question, while she was on the witness stand.  He responded

silently as well as if to say that the jury was fixed against me.  In any event, there is a

history of her being on my daughter's case with a particular animus against her and me.

(Inconsistent Rulings)

18.    Court rulings at trials were inconsistent. I was <u>acquitted</u> of violating a court order for Eva Al-Z.'s conservatorship for the incident of March 26, 2005 because Eva Al-Z. was not conserved on that date. Nor was she a dependent. But I was convicted of violating a conservatorship order for the incident on June 12, 2005, even though she was not yet conserved by the "Letters".

19.    By the same token, I was <u>acquitted</u> of violating the conservatorship order for the incident of March 26, 2005 and therefore should have been acquitted of harming a dependent on that same date. She was not conserved on that date.

(Unlawful Orders)

20.    The conservatorship order was issued against my daughter, even though there were no police or medical reports citing her as a "5150" under Welfare and Institutions Code sec. 5150 during the investigation period for a conservatorship.

21.    The restraining order can only be unlawful, as it is founded on the conservatorship order declaring Eva Al-Z. as a dependent.

(Expert Witnesses were not Credible)

22.    Sheriff deputies created reports against Eva Al-Z. by writing them just before the trial over a year after the supposed incident. The reports were false.

(Marsden Defense)

23.    My private defender, Mitri Hanania, did not disclose what a jury member stated to him as a form of complaint. I learned this from the court docket.

24.    The private defender did not ask for a trial separate from the case about my mother.

25.    I asked Mr. Hanania to move for a mistrial, arrest of judgment, a dismissal, and other post-verdict relief on the various irregularities. He refused to do so and when I said I would be in pro per for the motions, he refused to terminate his services.

26.    According to the court docket, he was aware of irregularities in the jury process, as a jury member tried to complain to him according to the court docket. But he did not inform me.

(Abuse of Court's Discretion)

27.    Neither Hon. Susan Etezadi nor Hon. Elizabeth Lee allowed me to argue necessity and justification for having helped Eva Al-Z. leave a harrowing ordeal.

28.    Hon. Etezadi, who presided over the 2006 trial would not allow my motion for mistrial to continue. Also, I was pressured to drop my application to be in pro per or face a stiff sentence. Hon. H. James Ellis in **Exhibit 16** stated earlier that the matter of my motion for a mistrial would be continued.

29.    Hon. Elizabeth Lee presiding over the 2007 trial would not allow me to show evidence of the fact that Eva Al-Z. was railroaded into a conservatorship (Paramedics' Records, etc., beginning part of **Exhibit 5**).

Conclusion

30.    For the above reasons, the conviction should be challenged as unconstitutional and in violation of my civil rights.

---

1

## Relief Requested

2

I request that the court allow my petition for a writ of habeas corpus regarding the

3

case tried in 2006 (SM340531A; 1645 CRB) to proceed, as I am asking that the

4

convictions be overturned and fines and penalties be voided and refunded. The court may

5

6

grant any relief regarding the case tried in 2007.

7

## DECLARATION

8

STATE OF CALIFORNIA

9

SAN MATEO COUNTY

10

I, Petitioner Shirley V. Remmert, can competently testify as to the facts herein, as

11

they are within my personal experience. As for those matters based on information and

12

13

belief, I believe them to be true. I declare that the above statements are true and correct

14

under the penalties for perjury of the federal laws.

15

16

DATE: May 29, 2008

17

18

Respectfully Submitted By:

19

20

Shirley V. Remmert

21

Petitioner

22

23

24

25

26

27

28

158                    CERTIFICATE OF SERVICE

I hereby certify that I caused the within documents:

**PETITIONER'S SHOWING CAUSE FOR EXHAUSTION OF STATE
REMEDIES; STATEMENT OF CHALLENGED CONVICTIONS; BASIS FOR
CONSTITUTIONAL CLAIMS/ EXHIBIT A/ RE HABEAS-CORPUS PETITION**

Superior Court Case No.
Bankruptcy Court Case No.  / Adversarial Complaint No.:
United States District Court Case No.: **C-08-1645 CRB**

to be served on the party(ies) in this action:

**1.    Deputy District Attorney Sean Dabel, 400 County Center, Redwood City, CA
94063**

(By Personal Service). I, Shirley **V.** Remmert, caused each such envelope to be
delivered by hand on **May 30, 2008** to the person or offices of each addressee indicated
by the corresponding number or symbol on the following page or above.

(By First-Class Mail, in the U. S. Post Office), I, **A. Garcia,** caused each such
envelope to be mailed on _____ in the U.S. Post Office in Menlo Park to each
addressee **(    )** indicated by the corresponding number on the continued page or above.
*I, Arturo Garcia, am a self-employed agent over 18 years of age and I am not a party in
this case. My business address is 21 Coleman Place, Menlo Park, CA 94025.*
(By Facsimile), I caused each such document to be sent by facsimile to the person
or offices of each addressee indicated by a said symbol.
(By Telephone), I gave a notice to a person or answering machine. The particulars
are as follows:
I declare that the above statements are true under the penalties for perjury of the
federal laws.

**May 30, 2008**
_____          *Shirley V. Remmert*
            Date                        **Shirley V. Remmert**

1 of 1