IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY V. REMMERT,<br><br>   Petitioner,<br><br> v.<br><br>JAMES P. FOX, District Attorney of San Mateo County,<br><br>   Respondent.        / | No. C 08-1645 CRB<br><br>**MEMORANDUM AND ORDER** |

   This pending habeas petition arises from the conservatorship of the adult daughter of petitioner Shirley Remmert. In November 2006, petitioner was convicted of two misdemeanor counts of putting her daughter at risk and one misdemeanor count of violating a court order. She served 30 days in jail and is currently on probation from those crimes. After carefully considering the record and the arguments of the parties, the petition for habeas corpus is DENIED.

             **FACTUAL BACKGROUND**

   On March 26, 2005, police were notified that petitioner Shirley Remmert ("Remmert") had abducted her mother Julie Venoya. When police visited Remmert at her home, they found Remmert's adult daughter, Eva Al-Zaghari, unresponsive in her bed. The fire department was called to the home and transported Eva to a Kaiser hospital. The next day Eva was transported to the in-patient psychiatric ward at San Mateo Medical Center.

Eva was diagnosed as suffering from schizophrenia, diabetes and hypertension and placed on a 5150 involuntary hold.

Eva had been hospitalized in 2004 and her discharge recommended that she take two oral hypoglcemic medications for her diabetes as well as medication for schizophrenia. When she was admitted in March 2005, however, her medical condition suggested her diabetes was not being controlled by diet or medication. San Mateo medical personnel discussed Eva's condition with Remmert who explained that she and Eva were Christian Scientists and did not believe in medication. Remmert also reported that she did not believe that Eva suffered from a mental illness.

Eva remained hospitalized at the San Mateo Medical Center for a month and a half. She was temporarily conserved by court order on April 14, 2005 and May 15, 2005. Eva was subsequently transferred to the Cordilleras Center in San Mateo. A jury trial commenced in June 2005 as a result of San Mateo's efforts to subject Eva to a permanent conservatorship. The County offered medical testimony that Eva's not taking her medication placed her in danger. Remmert testified against conservatorship. The jury found in favor of conservatorship and on June 10, 2005 an order permanently conserving Eva was filed.

On June 11, 2005, officers were dispatched to Cordilleras in response to a call that Eva was missing. According to Cordilleras receptionist Donna Gomez, Remmert came to Cordilleras that day with what she claimed was a "legal paper" and departed with Eva. The following day the officers located Remmert and Eva; Eva had not taken her medication for two days. Eva told officers she planned to leave the state, the country, and the planet. She was placed on a 5150 hold and transported to San Mateo County Psychiatric Emergency Services.

The County obtained a restraining order commanding Remmert to stay away from Eva on July 11, 2005 and on July 21, 2005, Supervising Deputy Public Guardian for San Mateo Marcie Moon was appointed Eva's public guardian.

On April 13, 2006, Remmert's son-in-law (married to Remmert's other daughter) overheard Remmert speaking with Eva on the telephone. Remmert had bragged to the son-

in-law and his wife about the ways she was violating the order to not have any contact with Eva and she confessed to disposing of Eva's medications because she did not believe in them.

In April 2007 Remmert helped her daughter escape from a halfway house. In June of that year she was tried and convicted of violating the terms of her probation as a result of the escape.

## PROCEDURAL HISTORY

The District Attorney charged Remmert with four misdemeanors. First, she was charged with dependent adult abuse in violation of California Penal Code section 368(c) arising from the condition in which Eva was found on March 26, 2005. Second, she was charged with Penal Code section 368(c) and contempt of court arising from her taking Eva from Cordillera on June 11, 2005. Finally, the County charged Remmert with contempt of court for violating the restraining order when she telephoned Eva on April 13, 2006.

The charges were tried to a jury in November 2006 . Remmert was represented by counsel. At the close of evidence the trial judge dismissed Count One (the June 11, 2005 violation of a court order) for insufficient evidence. The jury convicted Remmert of the remaining three charges. Her sentence was suspended and she was admitted to three years probation on the condition that she serve 30 days in the county jail.

Remmert subsequently filed two habeas petitions.[1] The first petition, 08-1644 CRB, arose from the June 2007 conviction and the second petition, 08-1645 CRB, challenges her November 2006 conviction. Upon review of the habeas petitions the Court ordered Remmert to show cause that this Court had jurisdiction of her petitions. After reviewing her response, the Court dismissed 08-1644 CRB for a failure to exhaust administrative remedies and ordered the State to respond to the petition now pending.

//

---

[1] Remmert is no stranger to this Court having filed no fewer than 23 cases in this District alone, all relating to the conservatorship of her daughter, the conservatorship of her mother, the custody of her grandson, and a family property dispute, and she reports that the state courts have declared her a vexatious litigant.

3

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ( 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In general, a federal habeas court is "highly deferential" to the rulings of the state courts and grants them "the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam) (citation omitted).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000 ). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

4

1  While circuit law may be "persuasive authority" for purposes of determining whether a state
2  court decision is an unreasonable application of Supreme Court precedent, only the Supreme
3  Court's holdings are binding on the state courts and only those holdings need be
4  "reasonably" applied. Id.

5  If a federal court determines that a constitutional error has occurred, the court must
6  also find that said error "had substantial and injurious effect or influence in determining the
7  jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v.
8  United States, 328 U.S. 750, 776 (1946)). Essentially, the petitioner must prove that any
9  such error resulted in "actual prejudice." Id.

## DISCUSSION

Remmert's petition makes the following claims: (1) the evidence was insufficient to support a conviction, (2) she did not receive the required due process, (3) a "Marsden" claim, (4) government witnesses gave perjured testimony, (5) "necessity and justification," (6) malicious/retaliatory prosecution, and (7) abuse of court's discretion.

### I.   Sufficiency of the Evidence

Remmert's first claim ("Statements Purported to be Facts are Not True"), fourth claim ("No Proof of Harm"), and fifth claim ("Violation of my constitutional and civil rights") in effect challenge the sufficiency of the evidence at trial. These claims are barred. "If a petitioner procedurally defaults his federal claims in state court by operation of a state rule that is independent of federal law and adequate to support the judgment, federal habeas review of the claims is barred unless the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice." Carter v. Giurbino, 385 F.3d 1194, 1196-97 (9th Cir. 2004).

The state appellate court rejected Remmert's habeas petition with a citation to In re Lindley, 29 Cal.2d 709, 723 (1947). "Lindley stands for the California rule that a claim of insufficiency of evidence can only be considered on direct appeal, not in habeas proceedings." 385 F.3d at 1196. "A petitioner who fails to exhaust sufficiency of evidence

5

1  claims in his direct appeal and raises them instead in a subsequent state habeas petition has
2  procedurally defaulted those claims as a matter of California law." Id. at 1197.  The Ninth
3  Circuit has held that Lindley is an independent and adequate state procedural bar;
4  accordingly, Remmert's challenge to the sufficiency of the evidence at trial cannot be heard
5  in this federal habeas proceeding. Id. at 1198.

6  **II.    Due Process**

7      Remmert makes a number of claims under the rubric of "due process."  First, she
8  asserts that she was not arraigned for the crimes of conviction.  Her trial counsel did not raise
9  this issue at trial and it was not raised on her direct appeal.  In any event, the State responds
10 that Remmert was arraigned on August 29, 2005.  Answer at 8 (citing Answer, Exh. A at 4).
11 The problem with this response is that the State also asserts that Remmert was charged with
12 the crimes at issue in March 2006, thus, she could not have been arraigned in August 2005 on
13 those charges.  Moreover, one of her challenged convictions arose form an April 2006
14 incident; Remmert could not have been arraigned on this charge in August 2005.

15     The state trial habeas court–the last state court to issue a reasoned decision on the
16 issue–found that Remmert was arraigned on August 29, 2005 and that, in any event, she had
17 failed to demonstrate prejudice.  As the Court explained above, the August 2005 arraignment
18 could not have applied to the new charges filed in March 2006 and beyond.  Nonetheless, the
19 state court's determination of no prejudice was not contrary to nor an unreasonable
20 application of federal law. Even if this Court reviews the state court's rejection of this claim
21 de novo, the Court concludes that Remmert has also not shown any prejudice from the failure
22 to arraign her.  See Walker v. Felker, 2008 WL 3166480 (9th Cir. Aug. 5, 2008) (holding
23 that petitioner had not demonstrated any prejudice from the trial court's failure to re-arraign
24 petitioner on amended criminal complaint); see also United States v. Stanko, 528 F.3d 581,
25 584 (8th Cir. 2008) ("lack of formal arraignment does not deprive defendant of any
26 substantial right so long as accused had sufficient notice of accusation and adequate
27 opportunity to defend himself") (summarizing Garland v. Washington, 232 U.S. 642, 645
28 (1914)); United States v. Lalonde, 509 F.3d 750, 758 (6th Cir. 2007) (listing cases holding

the same). Petitioner was advised of her constitutional rights at the August 2005 arraignment, and she does not claim that she gave up some of those rights, such as the right to remain silent, the right to an attorney, or the right to trial, because of the failure to re-arraign her on the new charges; indeed, she had a jury trial at which she was represented by counsel.

Next, Remmert appears to challenge the admission of Remmert's removal of her conserved mother from a nursing home. That evidence, however, was stricken from the record after the trial judge dismissed the charge relating to Remmert's June 11, 2005 removal of her daughter. Answer, Exh. B at 531.

Remmert's assertion that "facts of EvaAl-Z [Remmert's conserved daughter] should have made it a separate case" does not make sense and is therefore not a basis for habeas relief. Remmert's claim that "acquittal not consistently applied" also fails. The reason the trial judge gave for dismissing count one–that the conservatorship order did not affirmatively prevent one from taking Eva from her placement–does not apply to the three counts of conviction.

Finally, Remmert's challenge to the state habeas court's determination that the prosecutor did not engage in jury tampering is without merit. Under the AEDPA, the state court's factual findings "are entitled to a presumption of correctness, unless the petitioner can prove otherwise by clear and convincing evidence." Sanders v. Lamarque, 357 F.3d 943, 947 (9th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). This Court may grant the writ only if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, Remmert must show by clear and convincing evidence that the state court "made an objectively unreasonable determination of the relevant facts." Sanders, 357 F.3d at 948. She has not done so.

**III.   Marsden Defense**

In her reply to respondent's answer, Remmert explains this claim as follows:

> The Marsden defense was made after the jury verdict of guilty in a post-judgment motion for mistrial continued by Hon. H. James Ellis. At the

7

> sentencing trial of January 17, 2007, Hon. Susan Etezadi, discouraged the Marsden defense and motion for mistrial and said that only a sentencing would occur in her court; that there would be no continuance of the post-judgment motions.

Reply at 3.

A California criminal defendant who is unhappy with his court-appointed counsel must be permitted to state the reasons why he believes his counsel should be replaced. People v. Marsden, 2 Cal.3d 118 (1970). Such procedure is known as a "Marsden" motion. Not every conflict with his counsel, however, entitles a criminal defendant to new counsel. "The right to counsel does not guarantee 'a right to counsel with whom the accused has a meaningful attorney-client relationship.'" Daniels v Woodford, 428 F.3d 118, 1197 (9th Cir. 2005) (quoting Morris v. Slappy, 461 U.S. 1, 3-4 (1983)). A state court's denial of a Marsden motion amounts to a constitutional violation where there was an irreconcilable conflict between the defendant and counsel which prevented effective representation. Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).

Remmert has offered no evidence that she ever made a Marsden motion; instead, the record she cites reflects that after she was convicted she filed a post-trial motion for a new trial even though she was still represented by counsel. She contends that the sentencing judge then refused to consider the motion, although the habeas record does not include the transcript of the proceeding. Her counsel apparently did not believe the motion should be filed.

It appears Remmert is actually complaining that she was not allowed to represent herself post trial. See Faretta v. California, 422 U.S. 806 (1975). As she has not provided the Court with the transcript of the relevant proceedings, however, she has not demonstrated that she ever asked to represent herself. The transcript she does provide indicates only that one trial judge continued her sentencing in light of her pro se motion for a new trial.

**V.  Perjured Testimony**

Remmert's claim that government witnesses gave perjured testimony fails for a myriad of reasons. At a minimum, however, she fails to identify the perjured testimony or provide any support for her assertion that such testimony was perjured. She also fails to

8

identify anything in the record that suggests that the State was aware of the perjured testimony. Without such evidence she does not have a basis for habeas relief. See Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004). This claim is simply another variant of her challenge to the sufficiency of the evidence; she contends the State's witnesses should not have been believed.

## VI. Necessity and Justification and Abuse of Court Discretion

Petitioner appears to contend that her conduct was justified because the State's treatment of her daughter amounted to "malpractice." She also includes a claim entitled "Abuse of Court Discretion." Neither argument implicates petitioner's federal constitutional rights; accordingly, habeas relief is not available. See Estelle v. McGuire, 502 U.S. 62, 67 (1991).

## VII. Retaliation

Finally, petitioner claims she was prosecuted in retaliation for her complaints about the County's treatment of her mother who had been placed in a county nursing home.

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion. [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.
>
> A prosecutor's discretion is not without limitations, however. While the Supreme Court demands "exceptionally clear proof" before inferring an abuse of prosecutorial discretion, the Court does prohibit punishing a person because he has done what the law plainly allows him to do. For example, a prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right.
>
> Nevertheless, [o]rdinarily, [courts] presume that public officials have properly discharged their official duties." As such, where a defendant contends that a prosecutor made a charging decision in violation of the Constitution, the defendant's "standard [of proof] is a demanding one.

Nunes v. Ramierz-Palmer, 485 F.3d 432, 441 (9th Cir. 2007) (internal quotation marks and citation omitted). Petitioner has not met her demanding burden.

//

//

9

**CONCLUSION**

For the reasons stated above, the petition for habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: March 30, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE